DANIEL J. RYAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24078. Promulgated February 26, 1930.

*R. J. Lamb, Esq.,* for the petitioner.
*Harry LeRoy Jones, Esq.,* for the respondent.

54

56

**OPINION.**

VAN FOSSAN: It is evident that the affairs of the Ryan-Bohn Foundry Co. were in a bad condition at the end of the year 1922. The evidence does not prove, however, that the preferred stock became worthless at any time during that year. The company's balance sheet of December 31, 1922, disclosed a total deficit of $222,422.76. The income-tax return filed by the corporation for the year 1922 stated practically the same deficit. If the figures stated in the balance sheet and the income-tax return had reflected truly the financial condition of the Ryan-Bohn Co. at the end of 1922 they would indicate clearly that the preferred stockholders then had an equity in the company's assets amounting to more than $500,000, or about 70 per cent of the $736,000 of outstanding preferred stock.

Petitioner contends, however, that the accounts of the Foundry Company did not accurately reflect its financial condition. The land on which the company's plant was constructed had cost $31,000 and its value had been arbitrarily appreciated in the company's books to $75,000. No proper allowance on account of depreciation of buildings, equipment, inventoried articles and similar items was made in the statement of the value of the assets set forth in the balance sheet of December 31, 1922. Even if the total deficit of

$222,422.76 stated in the balance sheet should be increased by the sum of $175,043.34, which we have found as a fact is a reasonable amount to cover the arbitrary appreciation of the land value omitted, depreciation of buildings and equipment, and similar items, nevertheless, at the end of 1922 there would still have been a balance of assets amounting to approximately $338,000, or about 44 per cent of the cost of the issued preferred stock. The fact that there had been a shrinkage in the value of the stock is not enough to establish worthlessness nor to justify the allowance of a deduction as a loss. This is especially true where the evidence establishes the existence of assets sufficient to pay a substantial percentage of the cost of the preferred stock on liquidation.

It is claimed by the petitioner that prospective losses in 1923 because of the contract for the purchase of pig iron and the contract with the Continental Motors Co. for the delivery of castings were at the close of 1922 liabilities which should now be added to the liabilities stated in the balance sheet of December 31, 1922, in order to determine the real financial condition of the Ryan-Bohn Foundry Co. on the latter date. It is argued that if such addition is made it will appear that on December 31, 1922, the Ryan-Bohn Foundry Co. was wholly bankrupt and its preferred stock was worthless. In support of this argument it is urged that on December 31, 1922, the company was losing $1.55 on each cylinder block delivered to the Continental Motors Co.; that there were still to be delivered 63,546 cylinder blocks under the contract of May 15, 1922; that the Continental Motors Co. had an option to purchase 150,000 additional cylinder blocks and that the total prospective loss on these 213,546 cylinder blocks was $330,996.30. It is also stated that since the contract price of the pig iron was $40.50 per ton, or $21.50 in excess of the market price of $19 per ton, the loss under the contract for pig iron would be $53,570.

It does not appear how much of the pig iron referred to had been used by the Ryan-Bohn Foundry Co. by December 31, 1922, but the petitioner stated in his testimony that most of it had been used at that time. It would seem, moreover, that the loss on the pig iron constituted at least a part of the loss on the manufactured products. In any event, this argument, founded on prospective losses which are based on future contingencies, seems to us to be purely speculative. Though the company subsequently became bankrupt and its preferred stock became worthless, there is nothing in the evidence which discloses either that the company was bankrupt and its stock worthless at the close of the year 1922, or what the future of the company's business would be. Furthermore, in view of the statement contained in his income-tax return for 1922 to the effect that the probable liquidation value of the preferred stock was 50 per

cent of its cost, the evidence that the petitioner himself considered the stock worthless in 1922 is not convincing.

It is true that we have held in a number of instances that corporate stock became worthless prior to liquidation of the corporation. *Joslyn Mfg. & Supply Co.*, 6 B. T. A. 749; *Homer M. Preston*, 7 B. T. A. 414; *N. P. Christensen*, 7 B. T. A. 625; *Gilbert H. Pearsall*, 10 B. T. A. 467. But in those cases the facts as to assets and actual liabilities, together with the attendant circumstances, justified us in holding that the stock in question became worthless in the taxable year. In the present case, however, we are of the opinion that the evidence does not justify such a decision. *Royal Packing Co.*, 13 B. T. A. 773.

*Decision will be entered for the respondent.*